UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| X2 BIOSYSTEMS, INC, <br><br> Plaintiff, <br><br> v. <br><br> FEDERAL INSURANCE COMPANY, <br><br> Defendant. | CASE NO. C13-1653 MJP <br><br> ORDER ON: <br> 1. DEFENDANT'S MOTION TO DISMISS <br> 2. PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT |

The above-entitled Court, having received and reviewed:

1. Defendant's Motion to Dismiss (Dkt. No. 7), Plaintiff's Response (Dkt. No. 15) and Defendant's Reply (Dkt. No. 18)

2. Plaintiff's Cross-Motion for Partial Summary Judgment (Dkt. No. 16), Defendant's Response (Dkt. No. 19), and Plaintiff's Reply (Dkt. No. 20)

and all accompanying declarations and exhibits, makes the following ruling:

IT IS ORDERED that Defendant's motion to dismiss is GRANTED; Plaintiff's complaint will be DISMISSED in its entirety, with prejudice.

ORDER ON MOTIONS - 1

1    IT IS FURTHER ORDERED that Plaintiff's cross-motion for partial summary judgment

2  is DENIED.

3  **Background**

4  The Underlying Litigation

5    Plaintiff is a developer and manufacturer of "products which imbed high performance

6  acceleration and rotation sensors in sport-specific gear to help detect sports-related brain

7  injuries." Pltf Resp., p. 2. The company entered into a Technology License Agreement ("TLA")

8  with Bite Tech, Inc. ("BT"), granting BT licenses to certain X2 technology. As partial

9  consideration for the TLA, BT was required to pay $2 million in "advance royalties."

10   Plaintiff terminated the contract prematurely; BT sued. The complaint alleged seven

11 causes of action; the only portions of that litigation which are at issue here are the underlying tort

12 claims: "Breach of Special Relationship" (Claim IV) and conversion (Claim V).

13   Claim IV alleged:

> By entering into the Agreement to jointly develop the BTX2 [*impact-sensing mouthguard*] and other products contemplated by the agreement, Bite Tech and X2 developed a special relationship of confidence and trust such that X2 had a duty to disclose facts that it knew may justifiably induce Bite Tech to act or refrain from acting.
> * * *
> As a direct and proximate result of X2's concealment of its intent to terminate the Agreement, Bite Tech made all of the advance royalty payments and devoted substantial time, money, and resources to the development of the BTX2 and other products contemplated by the Agreement.

The complaint further alleges that Bite Tech sustained damages proximately caused by the

breach of the duty of disclosure. Carson Decl., Ex. E. ¶¶ 42-47.

   Claim V of the Underlying Complaint alleged:

> Between June 2011 and January 2012, Bite Tech made eight $250,000 monthly advance royalty payments totaling $2 million, and did so because it reasonably believed that X2 intended to fulfill all of the terms of the Agreement.
> * * *
> X2 accepted these payments with the knowledge that it intended to terminate the contract before the BTX2 could be commercialized and generate revenues for Bite Tech.
> * * *
> Bite Tech demanded the return of the advance royalty payments… X2 failed to return the funds, which constitutes a separate and additional conversion of the funds.

Id., ¶¶ 49-52.

X2 settled the Bite Tech litigation in July 2013. As outlined below, Defendant contributed nothing to the settlement and never agreed to defend X2 or pay its defense costs.

The Pending Litigation: Insurance Contract Dispute

At the time of the BT litigation, X2 was insured by Defendant. By letter dated July 30, 2012, X2 tendered defense and indemnity requests for the BT lawsuit to Defendant. On October 1, 2012, Defendant denied coverage and a defense based on Exclusion III.(C)(2) of the insurance contract, which read:

> No coverage will be available under Insuring Clause (C) for any Insured Organization Claim:
> * * *
> (2) based upon, arising from, or in consequence of any actual or alleged liability of an Insured Organization under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an Insured Organization would have been liable in the absence of the contract or agreement.

Graff Decl., Ex. 1 at 19.

There were several other rounds of correspondence, but Defendant's position remained unchanged. When X2 settled the litigation in July 2013, Defendant had contributed nothing to the settlement nor paid any of X2's defense costs.

ORDER ON MOTIONS - 3

**Discussion**

Defendant's Motion to Dismiss

This entire lawsuit hinges on the legal effect of the exclusionary provision of the insurance contract. Were BT's tort claims against X2 "based upon, arising from, or in consequence of any actual or alleged liability of an Insured Organization under any written or oral contract or agreement," or would X2 "have been liable in the absence of the contract or agreement"? The Court finds that the answer is "yes" to the first question and "no" to the second.

X2 argues at length about the "ambiguity" of the exclusionary provision and cites case law that such provisions are to be strictly construed against the insurer. American Best Food, Inc. v. Alea London, Ltd., 168 Wn.2d 398, 404 (2010). Plaintiff's black letter law is sound and in some instances similar provisions have been found ambiguous under other facts, but the exclusion is not ambiguous in <u>this</u> situation.

Neither of BT's tort causes of action would have existed in the absence of contract between BT and X2, or in the absence of "actual or alleged liability" under that agreement. BT's Claim IV for breach of a "special relationship" reads

> *By entering into the Agreement* to jointly develop the BTX2 and other products contemplated by the agreement, *Bite Tech and X2 developed a special relationship* of confidence and trust such that X2 had a duty to disclose facts that it knew may justifiably induce Bite Tech to act or refrain from acting.

Carson Decl., Ex. E. ¶ 42 (emphasis supplied). Had the parties never entered into their contract, BT could never have plead that a "special relationship of confidence and trust" existed between them. And it was X2's alleged violation of their contract (the company's premature and allegedly improper termination of the agreement) that gave rise to this cause of action, which is

premised on X2's failure to disclose its intent to terminate while continuing to collect advanced royalty payments from BT. This tort claim fits squarely within the exclusion.

As does Claim V, the conversion cause of action:

> Between June 2011 and January 2012, Bite Tech made eight $250,000 monthly advance royalty payments totaling $2 million, and did so *because it reasonably believed that X2 intended to fulfill all of the terms of the Agreement*.

Carson Decl., Ex. E. ¶ 49.

Again, the advance royalty payments were entirely a creation of the contract between X2 and BT. Without the contract, there would have been no advance royalty payments; further, the premature termination of the contract gave rise to the conversion allegations (that the contractually-created advance royalty payments had been improperly collected and retained). This is exactly the situation for which the exclusionary provision was created.

X2 wants the Court to read the exclusionary language as excluding only tort claims which are based on the same <u>theory</u> of liability as the contract claims. Plaintiff argues that, because BT alleged wrongful termination because the company was not insolvent (the grounds which X2 cited for termination), the tort claims are not excludable because they "are not based on, do not arise out of, and are in consequence of whether BT was insolvent or whether the termination was allowed under the terms of the TLA." Response/Cross-Mtn, p. 13. Plaintiff goes on to argue that "[i]n fact, it is apparent that BT alleged these tort claims in case a court decided that the TLA was properly terminated." <u>Id.</u>

The latter argument is sheer speculation, unsupported by any evidence, and the Court will not consider it. The first argument finds no support in the plain meaning of the words of the exclusionary provision. Undefined contractual terms must be given their "ordinary and common meaning, not their technical, legal meaning." <u>Chartis Specialty Ins. Co. v. Queen Anne HS,</u>

1  LLC, 867 F.Supp.2d 1111, 1117 (2012)(quoting Allstate Ins. Co. v. Peasley, 131 Wn.2d 420

2  (1997)).  The exclusionary provision applies to claims "based upon, arising from, or in

3  consequence of any actual or alleged liability" under a contract (emphasis supplied).  It does not

4  say "based upon the same theory of contractual liability;" the exclusion applies if liability under

5  a contract (for any reason) is alleged and/or found, and the claim is "a consequence of" that

6  contractual liability having been alleged and/or found.  Contractual liability was alleged in the

7  underlying litigation; as a consequence of that liability being alleged, the tort claims at issue here

8  were also filed.[1]

9     The case law presented by X2 is either distinguishable or simply does not support its

10 case.  Citing to Washington contract law, Plaintiff claims support for its position in the case of

11 O'Toole v. Empire Motors, Inc., 181 Wn. 130 (1935).  Defendant was a car dealership which

12 contracted with a customer to repair a car which it had sold to him.  The repair was improperly

13 performed and the customer was injured as a result.  The car dealership's insurance company

14 refused to indemnify the dealer, citing a provision in the insurance contract which excluded all

15 claims "under any agreement or contract, oral or written."  Id. at 131.  The Washington Supreme

16 Court found against the insurer, ruling that:

17
   …where, in omitting to perform a contract, in whole or in part, one also omits to
   use ordinary care to avoid injury to third persons who, as he could with a slight
18 degree of care foresee, would be exposed risk by his negligence, he should be
   held liable to such persons for injuries which are the proximate result of such
19 omission."

20

21 ─────────────────────────

22    [1] Interestingly, Def makes a passing reference to X2's Revised Second Amended Answer and
   Counterclaim filed in the BT litigation.  In the "Affirmative Defenses" section, X2 stated that BT's claims for
23 breach of special relationship and conversion "*do not arise from tort or statutory duties independent of the parties'
   contract…*"  Graff Decl., Ex. 2, pp. 7-8 (emphasis supplied).  X2 never responds to this evidence and Def makes
   nothing further of it, but X2's new position in this pleading – that the tort claims are independent of the parties'
24 contract – is at least undercut, if not invalidated, by its prior pleading.

1 Id. at 137 (citing Hanson v. Blackwell Motor Co., 143 Wn. 547 (1927)).

2  The case does not support Plaintiff's position. The "ordinary care to avoid injury to third persons" was a duty which existed whether or not the parties had a contract. (Although customers do not traditionally sign a contract every time they take their car in to be repaired, the auto shop still has a duty to use ordinary care to avoid damaging their property.) But the facts of this case make it clear that, in the absence of a contract, these parties would have owed no duty to each other because none of the events of which BT complained would have occurred.

 Plaintiff also cites to an unpublished Iowa District Court decision, Harker's Distribution, Inc. v. Federal Ins. Co., 2009 WL 3199533 (N.D. Iowa 2009), as corroborating its argument. The case involved a former employee and shareholder who sued Plaintiff when it failed to redeem his shares upon termination of his employment, as required in the Articles of Incorporation and Shareholder Agreement. Although the employee had only sued under contract causes of action, the court ruled against the insurer who failed to defend or indemnify, reasoning that

> … the exception to the Contractual Liability Exclusion [*i.e.,* *"would have been liable in the absence of the contract or agreement"*] required Federal to consider whether McMillan *could have asserted* a claim against Harker's for its wrongful acts under a legal theory independently of any contract, and if so, whether Harker's *would have been liable* under that theory.

Id. at *5 (emphasis supplied).

 This is a classic outlier case – an unpublished District Court opinion, never cited as authority in any other case. Even were that not the case, Harker's does not apply to the facts before this Court. In the lawsuit underlying this litigation, BT did assert tort causes of action. Furthermore, where it is conceivable that a shareholder who found himself in the position of the ex-employee in Harker's but without the contractual relationship might have independent tort

claims for failure to redeem his shares upon termination (as the company had done for every ex-employee except the ex-employee), it is inconceivable that someone not in a contractual relationship with X2 could find themselves in the position of BT – there would be no "special relationship" just because BT had chosen to use X2's technology in its products, and Plaintiff provides no proof of analogous situations where a company has voluntarily paid "advance royalties" in the absence of a contract.

Plaintiff cites another unpublished District Court case, Cousins Submarines, Inc. v. Federal Ins. Co. (2013 WL 494163 (D.C. Wisc. 2013)), but again it does not advance its position. The two-part test announced in Cousins (can the tort claim be traced to the existence of the contract, and if "yes," is it barred by the exclusionary provision or "would [the damages] lie in the absence of a contract"?; Id. at *7) rejects the Harker's "could have been alleged" test and adds very little to the development of an analytical test for this exclusionary provision (the court called the clause "poorly drafted" and "rather confusing and difficult to apply;" Id. at *12). Additionally, the opinion basically sides with the insurance company in dismissing the vast portion of an intentional misrepresentation claim. X2 does its best to simultaneously disagree with the court's ruling and still argue that, under the same test it is questioning, the result would be favorable to them. But this is not true: under a test which asks if the "liability would have existed in the absence of [the] contract" (Id. at *8), X2 does not prevail.

Finally, Plaintiff cites Houbigant, Inc. v. Federal Ins. Co., 347 F.3d 192 (3d Cir. 2004), a New Jersey case involving a violation of licensing agreements (Plaintiff was a perfume manufacturer who sued a licensee for selling "watered-down" and substitute products under its label). The court applied a "but for" test which only found injuries to have arisen out of the

contractual breach if the injury would not have occurred "but for" the breach of the contract. The opinion held that:

> Although the relationship between Houbigant and the Insureds is contractual, the actions of the Insureds were independently tortious. The contractual relationship was not endemic to the Insureds infringing of Houbigant's trademarks.

Id. at 203. The Court fails to see how this opinion supports Plaintiff's position. The rationale in Houbigant is straightforward – trademark infringement is an independently tortious act that does not require a pre-existing contractual relationship in order to be actionable. The same cannot be said of the acts in this case. The Court is unaware of any case law – and Plaintiff cites to none – which holds that failure to return "advance royalties" is an independently tortious act. The same is true for "breach of a special relationship" created by a written agreement. In our case, the contractual relationship was endemic to the wrongs asserted by BT.

The Court agrees with Defendant: acceptance of its argument that the exclusionary provision of the parties' contract applies to the claims at issue effectively eliminates all of Plaintiff's causes of action in this lawsuit: request for declaratory relief, breach of contract, bad faith and IFCA violations. The Court further finds that, under these facts, amendment of the complaint would be futile, therefore the dismissal will be with prejudice.

Plaintiff's Cross-Motion for Partial Summary Judgment

Plaintiff's cross-motion for summary judgment concentrates on the issues of breach of duty to defend and bad faith. Its duty to defend argument rests on case law holding that the duty "requires an insurer to give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint." Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 60 (2007). But, having found that Defendant's analysis of its policy is correct and the

claims are excluded from coverage, the Court will not second-guess the insurance company's (accurate) determination that the policy did not cover the tort claims in the underlying litigation.

Similarly, a finding of bad faith would require the Court to rule that Defendant failed to defend "based on a 'questionable interpretation of law.'" Chartis Specialty Ins. Co., 867 F.Supp.2d at 1123 (W.D. Wash. 2010)(quoting American Best Food, 168 Wn.2d at 413).  Ruling in Defendant's favor on their motion to dismiss is the equivalent of a finding that Defendant's interpretation of the law as it applied to this policy and these facts was not questionable. Plaintiff's summary judgment motion will be DENIED.

**Conclusion**

Plaintiff's cross-motion for partial summary judgment is DENIED, and Defendant's motion to dismiss is GRANTED.  Finding that further amendment of the complaint would be futile, the dismissal will be with prejudice.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 5th day of February, 2014.

Marsha J. Pechman
United States District Judge